**United States District Court**

**For the Eastern District of Wisconsin**

---

**Claire Pytlik,**
c/o Pagel Law Firm
PO Box 620104
Middleton WI 53562

Plaintiff,

Case no:
Case Code: 30301

-vs-

**BCG Equities, LLC**
225 S. Executive Drive, Suite 200
Brookfield, WI 53005
Registered Agent:
J ADAM DOBBERSTEIN
225 S EXECUTIVE DR
STE 201
BROOKFIELD , WI 53005-4257

-and-

**DLF Law Group, LLC**,
225 S. Executive Drive, Suite 201
Brookfield, WI 53005
Registered Agent:
J ADAM DOBBERSTEIN
225 S EXECUTIVE DR
STE 201
BROOKFIELD , WI 53005-4257

Defendant.

---

**COMPLAINT**

---

**NOW COMES**, the plaintiff, Claire Pytlik, by and through her attorneys, Attorney Briane Pagel and LawtonCates, S.C., and as and for a complaint in the above matter hereby alleges as follows:

1. Plaintiff **Claire Pytlik** is an individual Wisconsin citizen residing at 402 Genessee St., Delafield, WI 53018.

2. Defendant **BCG Equities, LLC** is a Wisconsin limited liability company which derives most if not all of its income from the collection of debts, which debts were incurred by individuals for personal, family or household purposes, and which debts were originally owed or due to another entity, and/or which were in default when BCG acquired any right to collect the debt; the principal purpose, if not the sole purpose, of BCG Equities, is to collect debts of this sort. BCG has its principal place of business located at 225 S. Executive Drive, Suite 200, Brookfield, WI 53005.
3. Defendant **DLF Law Group, LLC**,is a Wisconsin limited liability company which derives most if not all of its income from the collection of debts, which debts were incurred by individuals for personal, family or household purposes, and which debts are now or were originally owed or due to another entity; the principal purpose, if not the sole purpose, of DLF Law, is to collect debts of this sort. DLF Law has its principal place of business located at 225 S. Executive Drive, Suite 201, Brookfield, WI 53005.

**Jurisdiction:**

4. Plaintiff brings this case pursuant to 28 USC 1331, in that she is suing under a federal statute. This Court has jurisdiction over the state law claims pursuant to 28 USC 1367.
5. On September 12, 2024, Pytlik entered into an agreement with a company known as "Galt Financial Solutions" to lend Pytlik money; Pytlik used these funds for her own personal, family and household purposes.
6. The total amount lend in the September 12 loan was $898.12.
7. Of the $898.12, only $400 was "new money," money which was given to Pytlik at the time of the September 12 loan. Another $489.12 of the September 12 loan was used to pay off a previous loan with Galt.
8. Galt charged Pytlik an annual percentage rate of 494.54%, meaning that Pytlik would pay $1,674.44 – more than four times the amount of new money she was receiving on this loan – in interest, even though the loan would be paid off by mid-March 2025.
9. The payment schedule for the September 12 loan was $214.41 biweekly, such that Pytlik was going to pay $428.82 each month, and thus every two payments was in fact more than the total new money Pytlik received from the September 12 loan.
10. Upon information and belief, the $489.12 that was paid off by the September 12 loan was a previous loan between Galt and Pytlik, with similar payment schedules and interest

rates and identical terms of default and other contractual requirements to the September 12 loan.

11. Pytlik at the time of taking out the Galt loan had several other short-term loans taken out from lenders other than Galt; upon information and belief, these loans were visible on Pytlik's credit report.
12. The contract Galt had Pytlik sign contained illegal clauses. The contract states:
    a. Pytlik, if she defaulted, could be required to pay "reasonable attorney's fees in the amount permitted pursuant to section 408.140 RSMO. Upon information and belief, "RSMO" means "Revised Statutes Of Missouri."
    b. Pytlik would be in default if she "fail[ed] to make payment in the full amount required by this Agreement on the date due."
13. Pytlik was unable to make all payments on the loan.
14. On November 14, 2025, DLF Law, representing BCG, filed a small claims lawsuit in Waukesha County, Wisconsin; this suit was assigned case number 25 SC 3564. This suit will be referred to herein as "the collection suit."
15. The collection suit complaint was signed by Attorney Tyler J. Glaser, on November 11, 2025 and was one of 12 complaints filed on November 11, 2025.
16. Glaser frequently files hundreds of cases per month. According to online court records, Glaser filed:
    a. 427 cases in February 2025,
    b. 496 cases in March 2025,
    c. 350 cases in April 2025,
    d. 118 cases in May 2025,
    e. 218 cases in June 2025,
    f. 269 cases in July 2025,
    g. 292 cases in September 2025,
    h. 379 cases in October 2025,
    i. 218 cases in November 2025,
    j. 191 cases in December 2025,
    k. 242 cases in January 2026
    l. 169 cases in February 2026, and

m. 253 cases in March 2026.

n. 507 cases in March 2024

17. According to online court records, as of July 16, 2016, Glaser was the attorney of record in more than 5,000 cases, as searching under his bar number returns "too many results."

18. Upon information and belief Glaser is required to approve a certain number of complaints as part of his job; further, upon information and belief, Glaser is and was required to also approve a certain number of demand letters per day. Upon information and belief, the number of demand letters Glaser must approve is similar to the number of complaints Glaser approves per day.

19. Upon information and belief, Glaser must also attend hearings assigned to him each week.

20. Glaser's schedule according to online court records searched at various times Glaser often had dozens if not more than a hundred hearings per week, including but not limited to:

    a. 247 hearings the week of May 19-23, 2025,
    b. 124 hearings the week of May 26-30, 2025,
    c. 90 hearings the week of June 2-6, 2025,
    d. 101 hearings the week of November 10-14, 2025,
    e. 98 hearings the week of November 17-21, 2025,
    f. 132 hearings the week of November 22-26, 2025,
    g. 51 hearings the week of March 16-20, 2026,
    h. 95 hearings the week of March 23-27, 2026,

21. In collection matters, there is often work done *after* the entry of a judgment on a complaint. These post-judgment matters include filing garnishment actions, attending supplemental exams of debtors, and other matters. Lawyers at DLF, including Attorney Glaser, thus have a case load that involves not just new case filings, but substantial work on cases that have already been filed and reduced to judgment. Many of these hearings do not appear on court calendars; for example, supplemental examinations are often if not always conducted outside of court through supplemental court commissioners; these hearings make up a substantial portion of the work attorneys such as Glaser must do.

22. Upon information and belief, Glaser must then on each workday attend hearings, approve collection complaints, and approve collection demand letters. This workload is in addition to all other matters a lawyer must take care of during the day, such as reviewing and responding to correspondence, research and writing, interacting with clients, preparing for hearings, and other similar tasks. This leaves an insufficient amount of time for Glaser to be personally involved in, and meaningfully involved in, the review of demand letters and collection complaints.
23. Further, upon information and belief, the amount of information BCG provides to DLF prior to the sending of the initial letter and prior to the filing of a complaint such as the one in this case is extremely limited, such that no amount of time spent reviewing the sparse materials provided would allow a lawyer to be meaningfully involved in the preparation of a demand letter or small claims' complaint.
24. Upon information and belief, BCG provides to DLF a very limited amount of information about the alleged debt before the complaint is filed; this information is often just a spreadsheet containing little information about the underlying debt, but instead just providing a name, address, an amount asserted to be owed, and other generalized information about the debtor.
25. Upon information and belief, BCG does not give DLF other materials to use in drafting the complaint or analyzing the case, even though those other materials would be relevant to a case. BCG upon information and belief does not provide to DLF a copy of the underlying contract or agreement signed or agreed to by the debtor, a payment history, a record of communications and bills sent to the debtor, or information about whether the debtor has asserted that the debt is not valid.
26. A lawyer who sends a demand letter or complaint represents, by virtue of that signature, that the lawyer signing that letter has done a reasonable investigation into the facts of the matter.
27. Consumers who receive letters or legal pleadings from collection lawyers are thus misled if the lawyer has not performed a reasonable, sufficient, and meaningful investigation into the facts of their case before making a demand or filing a complaint.

28. The complaint filed against Pytlik by defendants did not comply with Wisconsin pleading requirements. Specifically, the complaint does not specify the facts constituting the default.

29. Upon information and belief, Pytlik never received a statutorily-compliant notice of assignment from Galt.

30. Upon information and belief, Galt never gave Plaintiff a notice that the debt was being assigned; alternatively, if a document purporting to be such a notice was sent, it was not compliant with statutory requirements for such notices.

31. A lawyer who was meaningfully involved in a matter would notice that the complaint does not comply with Wisconsin Consumer Act pleading standards, and would not allow the filing of a complaint that does not include required information, and would be able to ascertain whether a notice of assignment had been given by the original creditor prior to the assignee filing suit.

32. BCG and DLF filed the small claims suit on November 14, 2025. On December 5, 2025, Pytlik's hired counsel appeared in the action. The next business day – meaning almost as soon as they received the notice of appearance – BCG and DLF dismissed their case without prejudice.

33. BCG and DLF have not since refiled or made any effort to collect this debt.

## First Cause of Action: Violation of Section 15 USC 1692e(3): Use of a communication which gives the appearance Of being authorized by an attorney-at-law When it is not:

34. Reallege and incorporate the foregoing as though set forth fully at this point.

35. A letter or complaint which has been signed by an attorney-at-law gives the appearance of being "authorized" by that attorney-at-law.

36. A letter or complaint which was not meaningfully reviewed in any substantive way by an attorney-at-law was not actually "authorized" by that attorney-at-law in any meaningful way.

37. Based on Glaser's workload and DLF's practices, the demand letter sent by DLF on behalf of BCG and the complaint filed in this matter, appeared to be authorized by Glaser, but because of Glaser's workload and lack of information about Respondent's matter, Glaser was not meaningfully involved in the preparation or consideration of the demand and the complaint, and thus the letter and complaint were not truly "authorized" by Glaser in any meaningful way.

38. Respondent is entitled to an award of statutory and actual damages, as well as her reasonable attorney's fees.

**Second Cause of Action:**
**(Failure to Provide Notice of Assignment)**

39. Reallege and incorporate the foregoing as though set forth fully at this point.

40. BCG's filing of a lawsuit against Pytlik without first ensuring she was given a notice of default and right to cure was dishonest, and was outside the bounds of reasonable commercial dealing.

41. BCG's filing of a lawsuit before sending the notices was dishonest in that BCG sought to gain an unfair advantage over Pytlik regarding payment of the debt because Pytlik was entitled to go on paying Galt until she received a notice of assignment from Galt, so BCG was attempting to circumvent Pytlik's rights by filing a lawsuit which appeared to have the legal ability to compel her to pay BCG, even though Pytlik had no such obligation. Pytlik was free to ignore any demands from BCG for payment unless and until she received a notice of assignment from Galt, but by filing a lawsuit, BCG intended to and did convince Pytlik that it could compel her to pay them.

42. BCG's filing of a lawsuit before Pytlik received a notice of assignment was outside the bounds of reasonable commercial behavior and done in an attempt to gain advantage over Pytlik because reasonable businesses make an attempt to comply with the law, and reasonable businesses would rather obtain payment voluntarily rather than undergoing the expense and time-consumption of litigation.

43. BCG's filing of a lawsuit before notice of assignment was given was outside the bounds of reasonable commercial behavior and done in an attempt to gain advantage over Pytlik because reasonable businesses would rather keep a customer engaged in a positive or neutral way with the company than make relations between the two parties hostile,

because (among other reason) doing so may increase the company's profit by charging interest above what judgment interest can be charged, will avoid litigation costs and expenses, will avoid the customer complaining to others or generating ill will against the company, and will avoid the expense of generating a new customer over retaining an existing customer. BCG however, opted to ignore those reasonable commercial practices in order to try to force Pytlik to pay it when she had no obligation to do so.

44. BCG further acts unreasonably because its approach to business means that it will incur greater costs in the enforcement of the debt; BCG has to pay lawyers and court costs, often in advance, and thus incurs significant costs in the collection of debts without ever inquiring whether the customer would or could pay in installments over time without the threat of litigation.
45. BCG's conduct accordingly violates section 421.108, Wis. Stats.
46. BCG's demand for payment from Pytlik when Pytlik by statute has a right to pay the original creditor unless and until a statutorily-compliant notice of assignment is provided to him by the original creditor, violates the FDCPA by falsely and misleadingly claiming a right to payment in full and to sue when no such right exists, by constituting harassing and abusive conduct, and by constituting an unfair or unconscionable collection practice.
47. As a result of the foregoing, Plaintiff is entitled to an award of damages of up to $1,000 pursuant to 15 USC 1692k(a)(2)(A).

## Third Cause of Action:
## Falsely Threatening To Continue Lawsuit:

48. Reallege and incorporate the foregoing as though set forth fully at this point.
49. BCG and DLF's conduct in filing the suit and then dismissing as soon as Pytlik hired counsel is conduct which has as its natural consequence the harassment, oppression and abuse of Pytlik, in that BCG and DLF caused to be filed a suit against Pytlik that resulted in a public record that will last at least 2 years, a suit that asserts that Pytlik owes money and is unwilling to repay it, making a public allegation of that. This is similar to the prohibition, at 15 USC 1692d(3) to the publication of a list of consumers who allegedly refuse to pay debts, and thus constitutes a violation of 15 USC 1692d. The harassment and oppression caused by this tactic is furthered by the fact that BCG and DLF dismissed the suit "without prejudice," which is an implicit, if not explicit, threat to refile the suit in

the future, forcing Pytlik to continue to fear that a lawsuit will be filed and to have to remain in contact with counsel even after the dismissal of the action.

50. BCG and DLF's conduct in filing the suit and then dismissing as soon as Pytlik hired counsel further constitutes a threat to take action that was not actually intended to be taken, to wit: BCG and DLF's filing and service of a lawsuit is intended to and does indicate to a consumer such as Pytlik that BCG and DLF will pursue a judgment against Pytlik without exception. However, BCG and DLF did not intend to and do not ever intend to continue lawsuits against customers who obtain consumer protection lawyers to defend them, and thus the filing of the lawsuit is a threat (to pursue a judgment against the customer) that BCG and DLF do not intend to actually take if the customer retains a lawyer. This conduct is made worse by BCG and DLF's dismissal of the case "without prejudice," which is an implicit, if not explicit, threat to refile the suit in the future, forcing Pytlik to continue to fear that a lawsuit will be filed and to have to remain in contact with counsel even after the dismissal of the action, when in fact BCG and DLF do not intend to do so.
51. BCG and DLF's conduct in filing the suit, then dismissing the suit without prejudice is further an unconscionable and unfair practice because it causes a public record to be made, then leaves that public record available online for up to two years, even though BCG and DLF did not intend to and do not intend to pursue the case anymore after a customer hires a lawyer.
52. BCG and DLF's conduct as alleged also violates sections 427.104(1)(h) and (L), Wis. Stats.
53. As a result of the foregoing, plaintiff is entitled to an award of actual and statutory damages.

**Fourth Cause of Action:**
**Violation of Section 425.107:**

54. Reallege and incorporate the foregoing as though set forth fully at this point.
55. Galt's conduct in making loans such as it did to Pytlik in this case, including knowing or having reason to know about other debts, the excessive interest rate, the short-term repayment schedule, the failure to comply with notice of assignment requirements, and the other circumstances of the loan, violate section 425.107, Wis. Stats.

56. BCG and DLF's conduct, likewise, violates section 425.107, Wis. Stats.
57. Although the Wisconsin Supreme Court has held that litigants may not bring an affirmative claim under section 425.107, a later Court of Appeals case noted that customers could use 425.107 if they had been sued first, and Pytlik was sued in Circuit Court first, giving her the right to use section 425.107 as an affirmative claim here.

**Fifth Cause of Action:**
**Illegal Clauses/Statutory Damages.**

58. Reallege and incorporate the foregoing as though set forth fully at this point.
59. The contract BCG attempted to enforce included clauses which are prohibited by Wisconsin law, including a clause purporting to require Pytlik to pay the merchant's attorney's fees.
60. Pytlik is entitled to an award of actual and statutory damages pursuant to section 425.304, Wis. Stats. because Galt took her signature on that agreement and arranged for her to sign it, and because Galt arranged for her to sign that agreement. BCG, as purported assignee of Galt, is liable for any claims Pytlik has against Galt.

**Damages:**

61. Reallege and incorporate the foregoing as though set forth fully at this point.
62. Plaintiff has suffered reputational harm from the conduct BCG and DLF engaged in; by suing her when they had no right to demand payment from her, and when she was entitled to go on paying Galt, and by then dismissing the case without prejudice when she obtained counsel, BCG and DLF ensured that a public record asserting that Pytlik owed them money – when she does not owe them money because she is entitled to pay Galt unless and until she receives a notice of assignment – would remain available and visible for up to two years; dismissing without prejudice further allows for the possibility that BCG and DLF will file a suit in the future, so the public would not conclude that Pytlik had prevailed in the suit or otherwise proven she did not owe the money alleged. Pytlik would not have suffered this reputational harm but for the violation of the Fair Debt Collection Practices Act and Wisconsin Consumer Act: Had BCG and DLF conceded that they lacked the right to demand payment from Pytlik or to force Pytlik to pay them because she had not received a notice of assignment, they would not have filed the

lawsuit; had BCG and DLF actually intended to follow through on the lawsuit even if Pytlik fought it, she could have proven in court that she is not required to pay them and public records would then reflect that.

63. Pytlik further suffered from informational injuries as a result of BCG and DLF's conduct. Specifically, BCG and DLF's implicit representation that the lawyers were meaningfully involved in the preparation of the complaint, a representation that was false, misled Pytlik by making her believe that the complaint had merit and the case had merit; had Pytlik known that the lawyers were not sufficiently involved in the preparation of the complaint, and that this lack of involvement had resulted in a complaint which was defective and could not lead to a default judgment, she would not have worried as much about the lawsuit and would not have been as emotionally and physically affected by the lawsuit.

64. Pytlik further suffered from informational injuries as a result of BCG and DLF's conduct in misrepresenting that they had the right to receive or demand payment from her, when she was legally allowed to pay Galt. Because of this misrepresentation, Pytlik was misled about whether she could contact Galt and pay Galt, rather than dealing with unknown entities who may or may not have had the right to collect the debt. Pytlik could not be sure who she should pay and therefore was misled about how best to respond to the lawsuit. Had BCG and DLF not falsely claimed that Pytlik was obligated to pay them, Pytlik could have submitted payment to Galt and avoided a lawsuit altogether, and had BCG and DLF been truthful with Pytlik in their communications, by telling Pytlik that she had the right to pay Galt unless and until she received a valid notice of assignment, Pytlik would have been able to contact Galt to negotiate a resolution, and would not have suffered physical symptoms of distress because she would have known that the suit would fail.

65. Plaintiff suffered from emotional distress as a result of the violations herein; this stress caused her physical symptoms including loss of appetite, loss of sleep, difficulty staying asleep, and a lack of ability to concentrate, and thus is entitled to an award of actual damages for violations of each statute herein.

66. Defendants' actions are intentional and done with an intentional disregard of Plaintiff's rights under the Wisconsin Consumer Act, and thus Plaintiff is entitled to an award of punitive damages for violations of state law.

67. Plaintiff seeks an injunction requiring BCG to delete any tradelines from any consumer reporting agencies to which it reports, and to not re-report this debt, and, further, to prohibit BCG from issuing or filing any 1099 form or other form which might or does threaten to impose a tax liability on Pytlik.

68. To the extent that Plaintiff is entitled to damages under both the Consumer Act and the FDCPA, Plaintiff will receive only one award of damages for a given violation, not two.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES IN THIS ACTION.**

Dated: November 5, 2026.

**Pagel Law Firm**
Attorney for Plaintiff
*Electronically Signed By:*

*/s/ Briane F. Pagel*
Attorney Briane F. Pagel
State Bar No. 1025514

P.O. Address:
PO Box 620104
Middleton WI 53562
(608) 206-4324
briane@pagellawfirm.com